UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHN CLAY MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-CV-0328-CVE-SAJ |
| ) | |
| LANCE JENSEN, individually and in his ) | |
| official capacity as a Police Officer, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court is Defendant Lance Jensen's Motion for Summary Judgment (Dkt. # 28) and Defendant Lance Jensen's Motion in Limine (Dkt. # 39). Plaintiff John Clay Miller ("Miller") filed a complaint (Dkt. # 2) pursuant to 42 U.S.C. § 1983, alleging that defendant Lance Jensen ("Jensen"), an officer of the Claremore Police Department, violated his constitutional rights in using "unnecessary force" in arresting him. In an opinion and order dated August 9, 2006, the Court granted the Motion to Dismiss Claremore Police Department (Dkt. # 10) and Defendants' Joint Motion to Dismiss Plaintiff's State Pendant [sic] Claims (Dkt. # 12). See Dkt. # 14. Jensen is the only remaining defendant in this action, and he now moves for summary judgment on the grounds that he did not violate plaintiff's constitutional rights and, in the alternative, that he is entitled to qualified immunity. For the reasons set forth below, the Court grants the motion for summary judgment. The motion in limine is therefore moot.

**I.**

This action stems from events occurring on September 5, 2004.  On that date, Officer Dusty Singer ("Singer") was conducting a traffic stop on Highway 66 in Rogers County, Oklahoma, when he observed another vehicle emitting exhaust and in which both the driver and passenger were not wearing seatbelts.  Singer entered his patrol vehicle, followed the vehicle, and activated his siren and overhead lights to pull over the vehicle.  Instead of pulling over, however, the vehicle sped forward.  It later became known that plaintiff was the driver of this vehicle.

For approximately seven minutes, Singer pursued the vehicle in a high-speed chase.  The entire high-speed chase is captured on dash camera videotapes of Singer, Officer Woodward ("Woodward"), and Officer Sutton ("Sutton").  See Dkt. # 28, Ex. 3, Singer Dash Camera Video; Dkt. # 28, Ex. 6, Woodward Dash Camera Video; Dkt. # 28, Ex. 8, Sutton Dash Camera Video.

At the intersection of Highway 66 and Fredrick Street, plaintiff ran a red light.  Dkt. # 28, Ex. 2, Singer Affidavit, ¶ 3; Dkt. # 28, Ex. 3, at 18:10:20 - 18:12:19.  He turned onto King Road and then onto N.S. Road 412.  Approximately four and a half minutes into the high-speed chase, Singer reported on the radio, "He's goin' faster.  He's got something in his hands, I don't know if he's armed or what he's got."  Dkt. # 28, Ex. 3, at 18:13:40.  Plaintiff then turned onto E.W. Road 52.  Singer testified that he noticed the passenger throw objects out of the window.  Dkt. # 28, Ex. 2, ¶ 4; Dkt. # 34, at 22.  Plaintiff ran a stop sign and crossed several lanes of a perpendicular road.  Dkt. # 28, Ex. 3, at 18:14:06 - 18:14:08.

Plaintiff then turned back onto Highway 66.  At one point, Singer pulled in front of the vehicle to perform a roadblock, but this attempt was unsuccessful.  Id. at 18:14:26.  Jensen and Trooper Chris Simpson ("Simpson") then positioned themselves farther ahead on Highway 66 to set up a roadblock with "stop sticks."  Dkt. # 28, Ex. 1, ¶ 6.  To keep plaintiff in the right lane of

Highway 66 so that he would run across the stop sticks, Singer positioned himself in the left lane beside plaintiff. Dkt. # 28, Ex. 2, ¶ 7. However, plaintiff edged toward Singer's vehicle in an attempt to get ahead of Singer. Dkt. # 28, Ex. 3, at 18:14:38. Once in front of Singer, at a short distance from Singer's vehicle, plaintiff braked in what Singer perceived to be an effort to force Singer to hit him or back away. Id. at 18:14:50 ("He's trying to ram me"). As he approached the roadblock, plaintiff made a U-turn on Highway 66. Simpson, Jensen, and Sutton then joined the pursuit. Dkt. # 28, Ex. 1, ¶ 8; Dkt. # 28, Ex. 16, Sutton Affidavit, ¶ 4. Woodward reported over the radio, "Driver is very dangerous; tried to ram 76." Dkt. # 28, Ex. 3, at 18:15:17. Plaintiff then ran into a ditch and blew out his right front tire. Id. at 18:15:26. He continued to travel at a high speed, and debris flew from the car and hit Singer's vehicle. Id. at 18:15:43; Dkt. # 34, at 22. Singer was notified that another trooper would take the lead in the pursuit. Singer pulled back and permitted another patrol vehicle to move ahead. Dkt. # 28, Ex. 3, at 18:16:24.

Plaintiff then turned to the right off of Highway 66, heading westbound. Id. at 18:16:33. He crossed over railroad tracks, and swung around in a circle. Id. at 18-16:36 - 18:16:43. He attempted to recross the railroad tracks; however, the wheels of the vehicle became lodged between the tracks, and the vehicle came to a stop. Id. at 18:16:55. In his affidavit, Jensen testified that, before plaintiff came to a stop, "Miller ran the front of his vehicle into the front of my patrol car." Dkt. # 28, Ex. 1, ¶ 10. Also, Woodward testified in his affidavit that he "observed Miller's vehicle ram the front left side of Officer Jensen's patrol car and bounce off and become lodged on top of the railroad tracks." Dkt. # 28, Ex. 7, Woodward Affidavit, ¶ 6. Jensen submitted photographs of the damage to his left front bumper as part of the summary judgment record. Dkt. # 28, Ex. 10, Ex. 11. However, none of the dash cameras captured this alleged collision on videotape.

3

Once plaintiff's vehicle came to a stop, Jensen's patrol car was only a few feet away from plaintiff's vehicle. Jensen excited his vehicle, drew his gun, pointed the gun at plaintiff, and yelled for him to get his hands in the air. Dkt. # 28, Ex. 1, ¶ 11. Miller did not put his hands in the air; instead, he jumped through the window of the car. Dkt. # 28, Ex. 8, at 18:14:40. Jensen testified that he saw a T-shirt or other object in plaintiff's hand. Dkt. # 28, Ex. 1, ¶ 12. However, Danny Miller ("Miller"), plaintiff's brother and the passenger in the vehicle, testified that "John had nothing in his hands." Dkt. # 34, Miller Affidavit, at 17. Jensen, only a few feet from plaintiff, moved forward with his gun still drawn and struck plaintiff two times in the face/head with his gun. Dkt. # 28, Ex. 8, at 18:14:42 - 18:14:44. Plaintiff then stood up and attempted to run from Jensen. Id. at 18:14:46. He proceeded only a few steps when Woodward tackled him to the ground. Dkt. # 28, Ex. 6, at 18:15:40; Dkt. # 28, Ex. 6, ¶ 6. Plaintiff "actively resisted" the officers' attempt to get him into handcuffs. Dkt. # 28, Ex.1, ¶ 15; Dkt. # 28, Ex. 6, ¶ 7. Jensen then instructed Simpson to use OC spray (i.e. pepper spray) on plaintiff's face. The officers were finally able to handcuff plaintiff, and Singer then took plaintiff into his patrol car. Jensen informed Singer that the officers had used pepper spray, so plaintiff would need to be "decontaminated." Dkt. # 28, Ex. 1, ¶ 17.

According to Singer, he did not observe any signs of injury to plaintiff's mouth or teeth and plaintiff did not complain of pain in that area. However, he "did complain of neck pain and wrist pain and therefore he was transported to Claremore Regional Hospital for evaluation and treatment." Dkt. # 28, Ex. 2, ¶ 16. At the Claremore Regional Hospital, plaintiff was treated by Thomas Milligan, M.D. ("Dr. Milligan"). The medical report indicates that plaintiff suffered from injuries to his head and neck; "mouth" was not circled as one of the locations of pain or injury. Dkt. # 28, Ex. 12. On the visual depictions of plaintiff's injuries/pain, two marks indicate pain or injury above

4

plaintiff's right eyebrow and on the back of his neck. Id. According to the medical exam report, "[t]here is no evidence of recent fracture identified involving the cervical spine. . . The disc spaces are well maintained." Dkt. # 28, Ex. 12, at 9. Plaintiff was given a soft neck brace for his neck. Id.; Dkt. # 28, Ex. 14. Dr. Milligan testified that "[a]t the time I saw and evaluated Miller in the Emergency Department on September 5, 2004, he had no signs of injury to his mouth or teeth." Dkt. # 28, Ex. 13, Milligan Affidavit, ¶ 5. However, he did notice on an "Emergency Nursing Assessment" prepared by Nurse Stimpson that plaintiff complained of "tongue pain." Dkt. # 34, Fry Affidavit, at 42. Also, in an inmate request, plaintiff stated "[w]hen I was arrested the cops knock [sic] my teeth out and have two of them left." Dkt. # 34, at 34.

Singer then transported plaintiff to the Rogers County Jail where he was booked with the following charges: (1) felony eluding after former conviction of a felony; (2) three counts of assault and battery with a dangerous weapon on a police officer; (3) attempt to escape a lawful felony detention; (4) resisting arrest; (5) driving under suspension; (6) operating a motor vehicle with a metal wheel on a highway; (7) failure to wear a seatbelt; and (8) operating a motor vehicle with a modified exhaust. Dkt. # 28, Ex. 2, ¶ 18. On September 21, 2006, plaintiff pled guilty to several charges in the District Court in and for Rogers County, Oklahoma.

Jensen is a CLEET certified police officer and has been employed by the City of Claremore Police Department since January of 2002. Dkt. # 28, Ex.1, Jensen Affidavit, ¶ 1. In his training, he was instructed that "suspects who pose a high degree of threat to officer safety can be struck with a fist or other instrument to stun them and hopefully gain compliance with lawful orders . . ." Id., ¶ 18. James Clark ("Clark"), a supervisor and Police Sergeant with the City of Tulsa, Oklahoma Department of Police, testified that "the stunning technique utilized by Officer Jensen is a legitimate

5

technique taught to law enforcement officers to gain compliance with lawful orders, and to distract suspects from acts of aggression and to avoid the necessity of greater force." Dkt. # 28, Ex. 5, Clark Affidavit, ¶ 11.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

Here, as in Scott v. Harris, __ S. Ct. __, 2007 WL 1237851, at *4 (U.S. April 30, 2007), there is "an added wrinkle in this case: existence in the record of [] videotape[s] capturing the events in question." The videotapes show the entire high-speed chase, including Jensen striking Miller twice and other officers tackling him to the ground. As in Scott, there is no allegation that the videotapes were "doctored" or altered in any way. Id. at *4. Even though plaintiff is the nonmoving party, the Court will not adopt plaintiff's version of the facts if it clearly contradicts the factual depictions in the videotapes. As noted above, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Id. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Id. (quoting Matsushita, 475 U.S. at 586-87) (emphasis added). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id. As in Scott, given that there is videotape evidence which clearly depicts the events in question, the Court relies upon that uncontroverted videotape evidence at the summary judgment stage.

### III.

### A.

Jensen first argues that plaintiff has failed to state a § 1983 claim. He argues that, in the complaint, plaintiff failed to identify any constitutional right that defendant allegedly violated. Instead, plaintiff claims "Assault and Battery by police officer's [sic] in violation of Civil Rights."

7

Dkt. # 2, at 5. The complaint states: "City of Claremore Police Officer Lance Jensen, acting individually and in his official capacity, did willfully, wantonly and with complete disregard for the law and Plaintiff's Civil Rights assault and batter the Plaintiff several times about the head and mouth area causing injury, permanent and ongoing, to the Plaintiff while the Plaintiff was standing defenseless after exiting his vehicle." Id.

Defendant is correct that "assault and battery" is not a constitutional violation. Nonetheless, from the facts recited in the complaint and the use of the phrase "unnecessary force," Dkt. # 2, at 6, it appears quite clear that plaintiff brings an excessive force claim pursuant to the Fourth Amendment. Thus, although the complaint is far from exemplary, the Court finds that plaintiff has sufficiently stated an excessive force claim. The Court proceeds to the merits of that claim.

**B.**

A claim of "excessive force in the course of making [a] . . . 'seizure' of [the] person is properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1989); see Scott, 2007 WL 1237851 at *5. In determining whether the force used to effect the seizure was "reasonable" under the Fourth Amendment, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against "the countervailing governmental interests at stake." Graham, 490 U.S. at 396 (citations omitted). Courts have "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. The Court must examine the circumstances of the particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

8

Further, the Court judges the use of force from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Here, the question is whether Jensen's actions in striking Miller two times in the face with his gun, aiding in the tackling of plaintiff, and urging another officer to use pepper spray were objectively reasonable . After viewing the three videotapes and the entire summary judgment record, the Court finds with little difficulty that Jensen's actions were objectively reasonable.

First, in assessing the "crime at issue," Graham, 490 U.S. at 396, the Court rejects plaintiff's suggestion that "the crime at hand is no seat belt and a loud exhaust." Dkt. # 37, at 9. Quite clearly, Jensen did not strike plaintiff in the face because he had not been wearing a seatbelt. Jensen's actions were in response to the previous seven-minute high-speed chase. During the chase, Miller drove through a red light and a stop sign, proceeded at high speeds, passed numerous cars, proceeded to drive after his tire blew out, attempted to "ram" Singer, and made a dangerous U-turn on Highway 66. Such a chase was highly dangerous to plaintiff, the officers, and members of the public. Thus, the "crime at issue" was a highly dangerous high-speed car chase which posed a substantial and immediate risk of serious physical injury to others. See Scott, 2007 WL 1237851 at *7.

The Court pauses to address plaintiff's suggestion that the police officers should not have pursued the high-speed chase. In his response, plaintiff states: "without contacting for any supervisor to oversee the chase he has initiated Officer Dusty Singer, Officer Woodward, Trooper Chris Simpson and Officer Lance Jensen ultimately carry out a high speed chase (speeds up to

9

seventy miles per hour) endangering the public and apparently chasing a person for no seat belt and a loud exhaust." Dkt. # 37, at 7. Remarkably, plaintiff appears to blame the police officers for endangering the public as a result of the high-speed chase. Further, he implies that the officers should have merely abandoned the chase. In Scott, the Supreme Court easily dismissed a similar argument that the "innocent public" could have been protected and the tragic accident avoided if the police had "simply ceased their pursuit." Scott, 2007 WL 1237851 at *6. The Supreme Court stated that it was "loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights." Id. at *7. The Supreme Court's reasoning in Scott applies directly to the case at hand. Plaintiff cannot rationally shift blame to the officers or suggest that they, as opposed to plaintiff, were responsible for jeopardizing the lives of the public.

Second, the Court finds that Jensen reasonably believed that plaintiff posed an immediate threat to Jensen's safety and the safety of other officers. During the seven-minute high-speed pursuit, Miller exhibited dangerous behavior towards the officers. Woodward specifically noted into the radio, "Driver is very dangerous; tried to ram 76." Dkt. # 28, Ex. 3, at 18:15:17. Given this context, Jensen did not view plaintiff as a peaceful, law-abiding citizen but as a dangerous suspect. When the cars came to a stop, Jensen ordered plaintiff to put his hands above his head.[1] But plaintiff

---

[1] Plaintiff appears to dispute this fact. See Dkt. # 34, at 8. He points out that the videotapes do not include Jensen's oral statements to plaintiff. However, given that the dash cameras were located inside Singer, Woodward, and Sutton's patrol cars, it is not surprising that the cameras do not record Jensen's statements made outside those patrol cars. Further, plaintiff offers no evidence that, contrary to Jensen's affidavit, Jensen did not order plaintiff to put

did not follow his order, and instead climbed through the car window.[2] At this time, Jensen was very close to Miller and reasonably perceived Miller to be a threat. In response to this perceived threat and Miller's failure to obey Jensen's commands, Jensen struck Miller two times with his gun,[3] as he had been trained to do in such situations. The Court finds that this response was objectively reasonable. In making this determination, the Court is mindful that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

---

    his hands above his head. Plaintiff's conclusory statements in his response brief do not constitute the specific facts necessary to establish a genuine issue of material fact.

[2]    There is a dispute as to whether plaintiff had something in his hand when he exited the car. According to Danny Miller, "John had nothing in his hands and had only tennis shoes and shorts on with a white hat on his head." Dkt. # 34, at 17. By contrast, Jensen testified in his affidavit that plaintiff was holding "what appeared to be a t-shirt, which covered one of his hands." Dkt. # 28, Ex. 1, ¶ 12. According to Jensen, because one of plaintiff's hands was covered, he thought that plaintiff might be carrying a weapon. Id. In viewing the videotapes, it is difficult to determine whether there is an object in plaintiff's hand when he exited the vehicle. However, viewing the evidence in the light most favorable to the nonmoving party, even if plaintiff did not have anything in his hand, the Court still finds that defendant is entitled to summary judgment. Whether plaintiff carried something in his hand is not a "genuine" issue of material fact which would preclude entering summary judgment in defendant's favor. See Frank v. U.S. West, Inc., 3 F.3d 1357 (10th Cir. 1993) (noting that factual disputes about immaterial matters are irrelevant to summary judgment determination). The threat perceived by Jensen stemmed from the totality of circumstances, including the dangerous high-speed pursuit.

[3]    The fact that Jensen's police report states that he struck plaintiff with his palm and not his gun does not create a genuine issue of material fact. See Dkt. # 34, at 23. It is not readily ascertainable from the videotapes whether Jensen struck him with his palm or gun. Thus, the Court views this fact in the light most favorable to plaintiff and assumes, for summary judgment purposes, that Jensen struck him with the gun, which would cause greater injury than a hand punch.

Finally, the Court notes that, at the time Jensen struck Miller, he reasonably believed that Miller was attempting to flee. Miller did not place his hands in the air, as ordered by Jensen. Also, Miller climbed through the window, which suggests that he was in such a rush to get out of the car that he did not even take the time to open the car door. Finally, and most importantly, Miller had attempted to evade the police for seven minutes during the high-speed chase – even after his tire blew out. Jensen had no reason to believe that, just because plaintiff's car became lodged on the railroad tracks, Miller would suddenly surrender. On the contrary, even after Jensen struck Miller, he (Miller) attempted to escape and ran from Jensen.

Although plaintiff appears to focus his excessive force claim on the fact that Jensen struck him in his face, the Court also finds that the ensuing use of force was also reasonable. Once plaintiff ran from Jensen and tried to evade arrest, Jensen and the other officers tackled him to the ground. Since he still resisted arrest, the officers decided to use pepper spray. Given the circumstances, this conduct was objectively reasonable.

Finally, the Court notes that there is a dispute concerning the extent of plaintiff's injuries. In the complaint, plaintiff alleges that he suffered injuries to his mouth and lost teeth. He provides some evidence in the summary judgment record that he suffered from mouth pain after the incident at issue. By contrast, defendant contends that plaintiff did not suffer any injury to his mouth. Even assuming that defendant caused plaintiff's mouth injury and the loss of several teeth, Jensen's conduct was objectively reasonable for the reasons stated above. Any dispute over the precise nature of plaintiff's injuries does not create a genuine issue of material fact.

In summary, the Court finds that, viewing the summary judgment record as a whole and particularly the evidence in the videotapes, it was objectively reasonable for Jensen to utilize the

technique of striking plaintiff to gain compliance with his order and to protect himself. The criminal conduct at issue was a dangerous, high-speed pursuit. Under the circumstances, Jensen reasonably believed that Miller posed an immediate threat to the safety of himself and the other officers and reasonably believed that Miller was actively resisting arrest or attempting to evade arrest by flight. See Graham, 490 U.S. at 396. Therefore, the Court finds that there was no constitutional violation, and defendant is entitled to summary judgment. Because there was no constitutional violation, the Court need not determine whether Jensen is entitled to qualified immunity.

**IT IS THEREFORE ORDERED** that Defendant Lance Jensen's Motion for Summary Judgment (Dkt. # 28) is hereby **granted**. Defendant Lance Jensen's Motion in Limine (Dkt. # 39) is **moot**. A separate judgment is entered herewith. The pretrial and trial dates are hereby **stricken**.

**DATED** this 29th day of May, 2007.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT